IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-30293

_____

MILLER EXPLORATION COMPANY,

Plaintiff - Counter Defendant - Appellant-Cross-Appellee,

versus

ENERGY DRILLING CO.,

Defendant - Counter Claimant - Appellee-Cross-Appellant.

_____

Appeal from the United States District Court
for the Western District of Louisiana, Alexandria
USDC No. 99-CV-802

_____

January 16, 2002

Before JOLLY, SMITH and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

We have thoroughly considered the arguments and briefs of each of the parties and after some deliberation have concluded that the district court did not err and that its judgment should be affirmed. The district court determined that, under the oil-drilling contract between Miller and Energy, Miller was liable for drill pipe and a drill rig that were swallowed by a crater. The crater resulted when underground pressure forced a large volume of salt water up the drill hole and eroded the ground near the rig. The district court also determined that, once Miller terminated the

_____

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

contract, Miller was not required to make daily payments to Energy while the rig was out of commission for repairs.

With respect to Miller's contractual liability for the damage to Energy's rig, we agree with the district court's conclusion that Section 10 of the contract controls this case and is unambiguous. Paragraph 10 of the contract provides:

> [Miller] shall prepare a sound location adequate in size and capable of properly supporting the drilling rig, and shall be responsible for a conductor pipe program adequate to prevent soil and subsoil wash out. It is recognized that [Miller] has superior knowledge of the location and access routes to the location, and must advise [Energy] of any subsurface conditions, or obstructions (including, but not limited to, mines, caverns, sink holes, streams, pipelines, power lines, and telephone lines) which [Energy] might encounter while en route to the location or during operations hereunder. In the event subsurface conditions cause a cratering or shifting of the location surface, or if seabed conditions prove unsatisfactory to properly support the rig during marine operations hereunder, and loss or damage to the rig or its associated equipment results therefrom, [Miller] shall, without regard to other provisions of this Contract, including Paragraph 14.1 hereof, reimburse [Energy] to the extent not covered by [Energy's] insurance, for all such loss or damage including payment of force majeure rate during repair and/ or demobilization if applicable.

This provision clearly places the risk of damage to the rig (in excess of Energy's insurance policy limits) on Miller if the damage is the result of "cratering" caused by subsurface conditions. Although Paragraph 10 also refers to Miller's duty to "prepare a sound location" and to advise energy of any relevant

"subsurface conditions or obstructions," we agree with the district court that these portions of the paragraph do not limit the language imposing liability on Miller for damage to the rig from cratering. Because the crater here was attributable to a subsurface condition (namely, underground pressure), the district court did not err in holding that Miller must reimburse Energy for the uninsured cost of repairing its drill rig.

We also agree with the district court that the drill pipe lost in the crater may properly be characterized as "in-hole" equipment subject to Paragraph 14.2 of the contract. Paragraph 14.2 provides that Miller "shall assume liability at all times for damage to or destruction of [Energy's] in-hole equipment, including, but not limited to, drill pipe, drill collars, and tool joints. . . ." Following the plain language of this provision, the district court did not err in granting summary judgment in favor of Energy on its damages claim for the value of the destroyed drill pipe.

Finally, we agree with the district court that, once Miller exercised its right to terminate the contract under Paragraph 6.3, Miller was no longer obligated to compensate Energy (at the force majeure rate) while Energy repaired its drill rig. Accordingly, the judgment of the district court is

AFFIRMED.